JOSHUA D. HURWIT, IDAHO STATE BAR NO. 9527
UNITED STATES ATTORNEY
SEAN M. MAZOROL, OREGON STATE BAR NO. 116398
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1413

LORINDA I. LARYEA
ACTING CHIEF
JENNIFER L. BILINKAS
TRIAL ATTORNEY
UNITED STATES DEPARTMENT OF JUSTICE
CRIMINAL DIVISION, FRAUD SECTION
1400 NEW YORK AVENUE, N.W.
WASHINGTON, D.C. 20005
TELEPHONE: (202) 305-3928
FACSIMILE: (202) 514-3708

U.S. COURTS

JUL 13 2022

Rcvd_____Filed_____Time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ERIC J. O'NEIL,<br><br>Defendant. | Case No. CR 22-0153-S DCN<br><br>**INDICTMENT**<br><br>18 U.S.C. § 981(a)(1)(C)<br>18 U.S.C. § 982(a)(2)<br>18 U.S.C. § 1344<br>28 U.S.C. § 2461(c) |

**INTRODUCTION**

The Grand Jury charges:

At all times relevant to this Indictment:

**INDICTMENT - 1**

1. The Defendant, ERIC J. O'NEIL ("O'NEIL"), was a resident of White Plains, New York.

2. O'NEIL owned and controlled Accountant R Us Inc., a New York-based business. Accountant R Us Inc. was incorporated in 2013 and was issued an Employer Identification Number ("EIN") by the Internal Revenue Service ("IRS").

### *The U.S. Small Business Administration*

3. The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

### *The Paycheck Protection Program*

4. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 to provide emergency financial assistance to Americans suffering economic harm related to the COVID-19 pandemic. One form of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program called the Paycheck Protection Program ("PPP").

5. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of

employees. These figures were used to calculate the amount of money the business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing payroll expenses. To qualify for a PPP loan, every application was also required to certify that the business seeking the loan "was in operation on February 15, 2020, and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC."

6. A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the loan using its own monies, which was one hundred percent guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

7. PPP loan proceeds were required to be used on certain permissible business-related expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the loan were eligible for forgiveness if the business used the loan proceeds on these expense items within a designated period of time and used at least a certain portion of the loan towards payroll expenses.

### *Relevant Financial Institutions*

8. Lender-1 was a financial institution based in Boise, Idaho that participated as a lender in the SBA's PPP loan program.

### *Overview of the Scheme to Defraud*

9. Beginning in or around March 2021, and continuing until at least in or around April 2021, in the District of Idaho and elsewhere, the Defendant, ERIC J. O'NEIL ("O'NEIL"), together with others known and unknown to the Grand Jury, did execute, and attempt to execute, a scheme

**INDICTMENT - 3**

and artifice to defraud Lender-1 in connection with a fraudulent PPP loan application submitted on or about March 25, 2021 seeking a $373,201 loan for Accountant R Us Inc. (the "PPP Loan Application").

### *Purpose of the Scheme to Defraud*

10.  It was the purpose of the scheme for O'NEIL to unjustly enrich himself, and others, by fraudulently obtaining a PPP loan through false pretenses, representations, and promises, and to conceal the scheme.

### *Manner and Means of the Scheme to Defraud*

11.  It was part of O'NEIL's fraudulent scheme to submit the PPP Loan Application on behalf of Accountant R Us Inc. ("Accountant R Us") containing false information concerning, among other things, the number of employees and its monthly payroll, certifications about the business, and intended use for the funds.

12.  In furtherance of the scheme, O'NEIL, together with others known and unknown to the Grand Jury, falsely certified on the PPP Loan Application that Accountant R Us was in operation on February 15, 2020, and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC. However, in fact, and as O'NEIL knew, Accountant R Us had no employees, paid no salaries, and paid no payroll taxes. O'NEIL further certified that the PPP loan funds would be used only for business-related expenses, including to retain workers and cover payroll expenses, and to make mortgage interest payments, lease payments, and/or utility payments. In fact, however, O'NEIL did not intend to use the funds for these purposes because Accountant R Us had no employees, payroll expenses, mortgage interest, lease, or utility bills.

**INDICTMENT - 4**

13. In furtherance of the scheme, O'NEIL, together with others known and unknown to the Grand Jury, submitted, and caused to be submitted, fraudulent IRS Forms 941 and 1120 to Lender-1 for the 2019 tax year. The IRS Forms 941 and 1120 contained materially false and fraudulent information concerning total income and salaries and wages for Accountant R Us as it did not appear to have any legitimate business operations or employees in 2019, and the Forms 941 and 1120 were never filed with the IRS.

14. In furtherance of the scheme, O'NEIL, together with others known and unknown to the Grand Jury, submitted, and caused to be submitted, a fake payroll log in support of the PPP Loan Application to Lender-1. Specifically, O'NEIL sent Lender-1 a purported Accountant R Us 2019 payroll log. The log listed 22 employees, including O'NEIL, and showed their total gross salary. The purported payroll log contained the social security numbers as well as the federal and state tax withholdings for each employee. The purported payroll log contained materially false and fraudulent information concerning total income and salaries and wages for Accountant R Us as it did not appear to have any legitimate business operations or employees in 2019.

15. In furtherance of the scheme, O'NEIL, together with others known and unknown to the Grand Jury, submitted, and caused to be submitted, fraudulent profit and loss statements for Accountant R Us in support of the PPP Loan Application to Lender-1. A profit and loss statement for the second quarter of 2019 falsely claimed Accountant R Us earned $702,500 in gross profit and paid $447,842 in wages. A profit and loss statement for the second quarter of 2020 falsely claimed Accountant R Us earned $516,875 in gross profit and paid $447,842 in wages. In fact, however, Accountant R Us did not appear to have any legitimate business operations or employees in 2019 and 2020.

## COUNT ONE

## Bank Fraud
## 18 U.S.C. § 1344

The Grand Jury further charges:

16. The allegations in paragraphs 1 through 15 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

17. From at least in or around March 2021 through at least in or around April 2021, in the District of Idaho, and elsewhere, the Defendant, ERIC J. O'NEIL, together with others known and unknown to the Grand Jury, did knowingly, and with intent to defraud, execute and attempt to execute a scheme and artifice to defraud one or more financial institutions, to wit: Lender-1, a mortgage lending business, and to obtain moneys, funds, and credits owned by and under the control of such financial institution by means of materially false and fraudulent pretenses, representations, and promises.

### Purpose

18. The Grand Jury realleges and incorporates by reference paragraph 10 of this Indictment as a description of the purpose of the scheme and artifice to defraud.

### Scheme and Artifice to Defraud

19. The Grand Jury realleges and incorporates by reference paragraphs 11 through 15 of this Indictment as a description of the scheme and artifice to defraud.

20. On or about March 25, 2021, ERIC J. O'NEIL, together with others known and unknown to the Grand Jury, in the District Idaho, and elsewhere, did knowingly execute the above-described scheme, by submitting the fraudulent PPP Loan Application for Accountant R Us to Lender-1 for $373,201. In violation of Title 18, United States Code, Section 1344(2).

## FORFEITURE ALLEGATION

### Bank Fraud Forfeiture
### 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2); 28 U.S.C. § 2461(c)

The Grand Jury alleges:

Upon conviction of any offense set forth in this Indictment, the Defendant, ERIC J. O'NEIL, shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

If any of the property described above, as a result of any act or omission of the Defendant:

1. cannot be located upon the exercise of due diligence;
2. has been transferred or sold to, or deposited with, a third person;
3. has been placed beyond the jurisdiction of the Court;
4. has been substantially diminished in value; or
5. has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2), Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c).

//
//
//
//
//

INDICTMENT - 7

Dated this 12th day of July, 2022.

A TRUE BILL

*/s/ [signature on reverse]*

_____
FOREPERSON

JOSHUA D. HURWIT
UNITED STATES ATTORNEY
By:

_____
SEAN M. MAZOROL
ASSISTANT UNITED STATES ATTORNEY

LORINDA I. LARYEA
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
UNITED STATES DEPARTMENT OF JUSTICE
By:

_____
JENNIFER I. BILINKAS
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION

**INDICTMENT - 8**