UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ERIC J. O'NEIL,<br><br>    Defendant. | Case No. 1:22-cr-00153-AKB-1<br><br>**MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION FOR CONTINUED RELEASE FROM CUSTODY PENDING APPEAL** |

Pending before the Court is Defendant Eric J. O'Neil's Motion for Continued Release from Custody Pending Appeal (Dkt. 62). The Court finds oral argument would not aid its decision-making process and decides the motion on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see* Dist. Idaho Loc. Crim. R. 1.1(f). The Court denies O'Neil's motion.

## I.  BACKGROUND

In July 2022, O'Neil was indicted for one count of bank fraud in violation of 18 U.S.C. § 1344. (Dkt. 1). O'Neil gave notice of his intent to plead guilty in April 2023 and entered his change of plea in May 2023. (Dkts. 25, 30, 32, 34). During his change of plea. O'Neil "admitted that he knew the two [Paycheck Protection Program] loan applications . . . contained materially false information about his business and were supported by fraudulent documents." (Dkt. 62 at pp. 5-6). O'Neil also admitted that his business "had no employees and thus had not filed any payroll related forms with the IRS" and "that he invented names and social security numbers to use as fake employees for purposes of the loan." (*Id.* at p. 6).

The presentence investigation found O'Neil, a resident of Connecticut, worked with co-conspirators in other states to submit false and fraudulent loan applications and tax documents for

his business, Accountants R Us. (Dkt. 45 at ¶¶ 11-12, 15). O'Neil submitted one such fraudulent application to a lender in Boise, Idaho. (*Id.* at ¶¶ 10, 12). O'Neil submitted this application despite that his business did not have legitimate operations or employees during the reported tax year. (*Id.* at ¶ 13).

Before sentencing, the Government objected to O'Neil's Presentence Investigation Report (PSR) and argued O'Neil should receive a two-level upward adjustment to his offense level pursuant to the sophisticated means enhancement, U.S.S.G. § 2B1.1(b)(10)(C). (Dkt. 42 at pp. 2-4; Dkt. 50 at pp. 4-6). The Government argued the enhancement applied because O'Neil falsified tax forms, a payroll log, and profit and loss statements for his business to defraud lenders; O'Neil engaged with co-conspirators to do so; and the scheme required a certain level of sophistication to fraudulently obtain two loans. (Dkt. 42 at p. 3). O'Neil objected to application of the enhancement, arguing he engaged "in a straightforward fraud that did not rise to the level of intricate scheming that warrants" the sophisticated means enhancement. (Dkt. 51 at p. 1).

During sentencing, the Court heard oral argument on whether the sophisticated means enhancement applied to O'Neil's conduct. (Dkt. 63 at pp. 4-10). In ruling on the Government's objection, the Court found O'Neil falsified tax forms, payroll logs, and profit and loss statements for his business, despite that the business did not have legitimate operations or employees; worked with co-conspirators to identify lenders; and submitted fraudulent loan applications. (*Id.* at p. 11). The Court further found O'Neil worked with co-conspirators located out-of-state to identify a lender in Idaho, a jurisdiction in which neither O'Neil nor his co-conspirators resided. (*Id.*). Based on the totality of the circumstances, the Court applied the sophisticated means enhancement. (*Id.*). The Court then calculated O'Neil's offense level at eighteen, and his criminal history category as one, resulting in a guideline range of twenty-seven to thirty-three months. (*Id.* at p. 13). The Court

sentenced O'Neil to twenty-seven months of imprisonment, followed by three years of supervised release, for committing bank fraud. (Dkt. 60). The Court ordered O'Neil self-surrender to the institution designated by the Bureau of Prisons. (*Id.* at p. 2). O'Neil filed a notice of appeal and seeks continued release pending appeal. (Dkts. 57, 62).

## II.  LEGAL STANDARD

A person convicted of a federal crime and sentenced to prison must be ordered detained pending appeal unless the Court finds "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released" and that "the appeal is not for the purpose of delay and raises a substantial question of law or fact" likely to result in reversal, an order for a new trial, a non-custodial sentence, or "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(B)(iv); *see United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985). "[T]he word 'substantial' defines the level of merit required in the question raised on appeal." *Handy*, 761 F.2d at 1281. A substantial question exists where the appeal raises a fairly debatable question. *Id.* at 1283.

## III.  ANALYSIS

O'Neil argues the Court made three procedural errors during sentencing: (1) incorrectly applied the sophisticated means enhancement, (2) failed to sufficiently explain the sentence, and (3) relied on clearly erroneous facts. (Dkt. 62 at p. 3). The Government argues each claimed error fails to raise a substantial question of fact or law. (Dkt. 66 at p. 5). The Government "accepts" O'Neil is not a flight risk and is not appealing for the purpose of delay. (*Id.* at p. 4). Given the nonviolent nature of O'Neil's crime and his conduct on release to date, the Court finds O'Neil is not a flight risk or a danger to the community. The Court also finds the appeal is not taken for

purpose of delay. At issue is whether O'Neil's appeal raises a substantial question of law or fact likely to result in reversal.

A.      **Substantial Question of Law or Fact**

1.      **Sophisticated Means Enhancement**

O'Neil argues the Court erred in applying the sophisticated means enhancement, and the error will result in his sentence being set aside on appeal. (Dkt. 62 at pp. 10-11). The sentencing guidelines direct the Court to increase a defendant's offense level by two points if "the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means." U.S.S.G. § 2B1.1(b)(10)(C). Application Note 9(B) provides "sophisticated means"

> means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

The Ninth Circuit has recognized "the enhancement properly applies to conduct less sophisticated than the list articulated in the application note." *United States v. Jennings*, 711 F.3d 1144, 1147 (9th Cir. 2013). In *Jennings*, the defendants "syphoned money" from their business into another bank account they gave a legitimate appearing name to, and then the defendants used the money for personal purposes without reporting the money as income. *Id.* at 1145-47. The Ninth Circuit held this conduct justified application of the sophisticated means enhancement. *Id.* at 1147.

Here, O'Neil emphasized his role in the scheme was limited to making up names and social security numbers for false documents submitted with the loan applications. (*See* Dkt. 63 at p. 8). O'Neil previously conceded, however, that he "signed the false documents, authorized [a co-

conspirator] to submit the applications, and received the $777,501 proceeds minus his [co-conspirators'] commission." (Dkt. 51 at p. 2). The loan applications were made on behalf of O'Neil's business, but the loan proceeds were not used for legitimate business purposes. (*See* Dkt. 45 at ¶¶ 13-14; Dkt. 51 at pp. 3-4).

As the Court discussed during sentencing, O'Neil's own conduct contributed to falsified tax forms, payroll logs, and profit and loss statements for his business, and he did this despite that he did not have the legitimate business operations and employees to qualify for the loans. (Dkt. 63 at p. 11). O'Neil also worked with co-conspirators in other jurisdictions to apply for a loan in Idaho. (*Id.* at pp. 11-12). After receiving the funds, O'Neil paid his co-conspirators a "commission" and proceeded to utilize the funds for personal use. (Dkt. 45 at ¶¶ 13-14). Given O'Neil's conduct, the Court applied the sophisticated means enhancement. (Dkt. 63 at p. 11).

O'Neil argues the enhancement was misapplied because the Court relied "on the means of the overall scheme and without identifying a basis to determine that [O'Neil] engaged in the conduct." (Dkt. 62 at p. 11). O'Neil also argues no fact supports he recruited "out-of-state recruiters or us[ed] fictitious entities." (*Id.*). The Court found, however, that O'Neil falsified a variety of documents for his business, despite that his business did not have the legitimate operations and employees to qualify for the loans; O'Neil worked with co-conspirators in other jurisdictions to complete his loan applications; and based on the totality of the circumstances, O'Neil's actions demonstrated the use of sophisticated means. (Dkt. 63 at pp. 11-12). The Court relied on O'Neil's individual conduct and specifically noted conduct he engaged in within the overall fraud scheme.

Moreover, the Court found O'Neil worked with co-conspirators to utilize his own business to apply for the loans, despite that it did not have legitimate operations or employees for purposes

of the loans applied for. (Dkt. 45 at ¶ 13). Insofar as O'Neil's business lacked legitimate operations, real employees, and was presented to lenders via false tax and business documents, the business was fictitious. (*See* Dkt. 58 at p. 1). That the business may have been legitimately formed and, at some point, may have had legitimate operations does not prevent application of the enhancement. *See United States v. Niko*, 584 F. App'x 693, 694 (9th Cir. 2014) (rejecting contention that enhancement should not apply where concealment of funds was not total because defendant used real name and social security number to open account for funds); *Jennings*, 711 F.3d at 1147 (same).

In short, O'Neil aided in knowingly fictionalizing portions of his business to qualify for the loans, authorized co-conspirators to submit fraudulent applications, filtered the obtained funds through his business, and then personally utilized the funds after distributing a portion of the funds to his co-conspirators. *See id.* at 1147 (affirming application of enhancement where defendants' conduct "reflected a sophisticated effort to conceal income" because concealed income was syphoned into a legitimate appearing account); *see also United States v. Augare*, 800 F.3d 1173, 1175 (9th Cir. 2015) (holding defendant's "coordinated and repetitive steps" to fraudulently obtain money justified application of enhancement). Indeed, O'Neil knew what he was doing. *See Niko*, 584 F. App'x at 694. Accordingly, application of the sophisticated means enhancement does not raise a substantial question of fact or law likely to be reversed on appeal. *United States v. Mirando*, 768 F. App'x 596, 598 (9th Cir. 2019) (affirming application of sophisticated means enhancement because district court could reasonably conclude sending fraudulently obtained funds to fictitious entity "adds a layer of fraud and apparent deception" sufficient to apply enhancement); *see also United States v. Bruey*, No. 22-12532, 2023 WL 9016349, at *6 (11th Cir. Dec. 29, 2023)

(affirming application of sophisticated means enhancement); *United States v. Redfern*, No. 22-4196, 2023 WL 2823064, at *3 (4th Cir. Apr. 7, 2023) (same).

### 2.     Explanation of Sentence

O'Neil also argues the Court did not sufficiently explain his sentence to permit meaningful appellate review. (Dkt. 62 at p. 11). Under 18 U.S.C. § 3553(a), the court is required to consider several factors in crafting a defendant's sentence, and § 3553(c) requires the court, "at the time of sentencing, [to] state in open court the reasons for its imposition of the particular sentence." To meet these statutory obligations, "the sentencing judge should articulate enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 339 (2007). Phrased differently, the sentencing judge has "a duty to provide a sufficient explanation of the sentencing decision to permit meaningful appellate review." *United States v. Trujillo*, 713 F.3d 1003, 1009 (9th Cir. 2013).

O'Neil emphasizes the Statement of Reasons, entered after sentencing, states he "recruit[ed] out-of-state co-conspirators" and engaged in conduct "involving fictitious entities." (Dkt. 58 at p. 1). O'Neil argues these findings contradict the PSR. The Statement of Reasons, however, represents the changes the Court made to the PSR's factual statements. (*Id.*). Moreover, the transcript of the sentencing proceeding demonstrates the Court considered the factors set forth by § 3553(a).[1] (Dkt. 63 at pp. 27-30). O'Neil does not raise any particular § 3553(a) factor he

---

[1]     The Court notes the written Statement of Reasons is issued to the United States Sentencing Commission pursuant to 28 U.S.C. § 994(w)(1). *See United States v. Mezquita Vega*, No. CR20-120RSM, 2023 WL 7129770, at *1 (W.D. Wash. Oct. 30, 2023). This requirement is separate and apart from the Court's obligation under 18 U.S.C. § 3553(c) to "state in open court its reasons for the imposition of the particular sentence." The oral pronouncement of a sentence controls, however, if a discrepancy exists between the oral pronouncement and a written document

**MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION FOR CONTINUED RELEASE FROM CUSTODY PENDING APPEAL - 7**

alleges the Court failed to consider. (Dkt. 62 at pp. 11-13). Rather, O'Neil again takes issue with the Court's application of the sophisticated means enhancement. The Court stated in detail why it applied the enhancement. (Dkt. 63 at pp. 10-13). As discussed above, the Court's application of the sophisticated means enhancement does not raise a substantial question of fact or law likely to be reversed on appeal. Given that the Court considered each § 3553(a) factor in determining O'Neil's sentence, his challenge to the Court's explanation of the sentence does not raise a substantial question of fact or law likely to be reversed on appeal.

### 3.    Factual Findings

Finally, O'Neil argues no evidence supports the Court's findings that O'Neil "personally created the falsified financial documents, recruited out-of-state co-conspirators, or used 'fictitious entities.'" (Dkt. 62 at p. 14). O'Neil does not explain how these factual findings impacted his sentence or how consideration of these facts was in error. Rather, O'Neil appears to again be challenging the Court's application of the sophisticated means enhancement.

As discussed above, ample evidence supports that O'Neil falsified financial documents, worked with out-of-state coconspirators, and utilized a fictitious entity. During his allocution, for example, O'Neil acknowledged his "role in creating the false names and social security numbers" and his knowledge "they would be used for creating false documents to acquire money [he] did not deserve." (Dkt. 63 at p. 25). Furthermore, O'Neil has also conceded he "signed the false documents, authorized [a co-conspirator] to submit the applications, and received the $777,501 proceeds minus [his co-conspirators'] commission." (Dkt. 51 at p. 2). O'Neil recognized the

---

memorializing the oral pronouncement. *See United States v. Hernandez*, 795 F.3d 1159, 1169 (9th Cir. 2015) (providing oral pronouncement controls over written judgment).

money "was supposed to be used to help businesses stay afloat, not [him] personally stay afloat."
(Dkt. 63 at p. 25). In short, O'Neil acknowledged he helped create and ultimately signed the
falsified documents, worked with out-of-state co-conspirators, and used a business that did not
have legitimate operations, real employees, or, for purposes of the loans in question, legitimate tax
and business documents. O'Neil's challenge to these specific factual findings does not raise a
substantial question of fact or law likely to be reversed on appeal.

**B.      Reduced Sentence**

Although the Court concludes O'Neil fails to raise a substantial question of law or fact, the
Court nonetheless addresses whether O'Neil's appeal is "likely to result in . . . a reduced sentence
to a term of imprisonment less than the total of the time already served plus the expected duration
of the appeal process." *See* 18 U.S.C. § 3143(b)(B)(iv). O'Neil contends his "[p]roperly
calculated" sentencing range is twenty-one to twenty-seven months. (Dkt. 62 at p. 15). Even
assuming that the Court erred in applying the sophisticated means enhancement and that O'Neil
was resentenced to a term of imprisonment re of twenty-one months, that term would not be less than
the expected duration of the appeal process.  Other than presenting conclusory argument, O'Neil
has failed to demonstrate otherwise.

## IV.  ORDER

**IT IS ORDERED that:**

1.      Defendant's Motion for Continued Release from Custody Pending Appeal
(Dkt. 62) is **DENIED**.

DATED: April 01, 2024

Amanda K. Brailsford
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION FOR CONTINUED RELEASE
FROM CUSTODY PENDING APPEAL - 9**